IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE: )
 ) Chapter 13
JOSE LUIS VEGA and )
ZORAIDA VEGA, )
 )
 ) Bankruptcy No. 15-00640
Debtors. )

### SECTION 506 VALUATION AND RULING ON REINHART'S OBJECTION TO DEBTOR'S FIRST MODIFIED PLAN

After an initial confirmation hearing on Debtor's Modified Chapter 13 Plan, the Court determined that, before it could rule on plan confirmation, it needed to hold a § 506 valuation hearing. The Court held that valuation hearing where Henry Nathanson appeared for Jose Luis and Zoraida Vega ("Debtors") and Dan Childers appeared for Reinhart Foodservice, L.L.C. ("Reinhart"). The Court took the matter under advisement. The parties filed post-hearing briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### STATEMENT OF THE CASE AND PARTIES' ARGUMENTS

Reinhart has a judgment lien on Debtors' commercial real estate. Debtors propose treating Reinhart as an unsecured creditor in their plan. Debtors argue that, at the time of the petition, Farmer's State Bank ("FSB") had two mortgages that fully encumbered the commercial property, leaving no further equity to which Reinhart's judgement lien could attach.

FSB's loans were cross-collateralized. They were secured by four mortgages across two of Debtors' properties: a commercial property and a homestead property. According to the Debtors' and FSB's agreement, one of the loans was secured by a first mortgage on the commercial property and a second mortgage on the homestead property. The other loan was secured by a first mortgage on the homestead property and a second mortgage on the commercial property. After filing bankruptcy, Debtors sold the homestead property with this Court's approval. This sale satisfied the loan that was secured primarily by the homestead property and secondarily by the commercial property.

Reinhart argues that this sale opened up equity on the commercial property because it satisfied the second lien. Reinhart argues that its prepetition judgment lien attaches to this equity. Debtors disagree. They argue that Reinhart's secured status is determined as of the date of filing, not by post-petition events.

Reinhart alternatively argues that, even if secured status is determined as of the petition date, Debtor incorrectly calculates the equity that was available at that time. Reinhart argues that the secondary mortgages would only be enforced if the primary collateral was exhausted. Reinhart notes that at the petition date, the homestead property fully secured the loan. Reinhart concludes that the secondary mortgage (on the commercial property) could not have been enforced at the

petition date and so did not keep Reinhart's judgment lien from attaching to the equity in the commercial property.

Debtors argue that, even if Reinhart is correct that the second mortgage is only effective after the first mortgage is exhausted, the commercial property was nevertheless fully encumbered at filing. Debtor argues that Iowa homestead law prohibits a homestead from serving as primary collateral where additional collateral is pledged. Debtors argue that this law functionally makes the commercial property the primary collateral for both of the FSB loans.

The Court agrees with Debtors. The Court finds that the time of the filing of the bankruptcy petition is the proper time to determine secured status. The Court also agrees with Debtors that under Iowa homestead protections, both mortgages were functionally secured primarily by the commercial property. Reinhart was thus unsecured at the time of Debtors' filing. Thus, Debtors properly treat Reinhart's claim under the plan.

## STATEMENT OF FACTS

In 2010, Debtors took out two loans with FSB. One loan had a maximum principal amount of $319,461.73. The other loan had a maximum principal amount of $417,000.00. Two properties secured these loans: a homestead at 3430 Lewis Bottom Road, Palo, Iowa ("Homestead Property"), and a commercial property in Cedar Rapids, Iowa, where Debtors operate a restaurant ("Commercial

3

Property"). According to Debtors' and FSB's agreement, the first loan of $323,415.13 was secured by a first mortgage on the Commercial Property and by a second mortgage on the Homestead Property ("First Loan"); the second loan of $474,230.41 was secured by a first mortgage on the Homestead Property and by a second mortgage on the Commercial Property ("Second Loan"). Thus, each property was encumbered by two mortgages. In sum, two loans imposed four mortgages on two pieces of property.

Reinhart did refrigeration work for Debtors at the Commercial Property. Reinhart was never paid. Reinhart obtained a $30,440.43 judgment against Debtors for failing to pay it for this work. This amount remained unpaid and became a judgment lien. The judgment was entered and recorded in 2014.

Reinhart's judgment did not attach to Debtors' Homestead Property. The judgment attached to, and became a judgment lien on, the Commercial Property. This judgment lien was junior to both FSB's first and second mortgages on the Commercial Property.

In September 2014, FSB filed a petition to foreclose on both the Homestead and Commercial Properties. The Iowa District Court entered a judgment of foreclosure in January 2015. The foreclosure sale was set for May 5, 2015.

On May 1, 2015, Debtors filed their Chapter 13 petition and plan. Debtors listed the value of the Homestead Property as $561,000 and the value of the

Commercial Property as $350,000.[1]  Debtors owed $323,415.13 on the First Loan and $474,230.41 on the Second Loan.

After filing, Debtors decided to sell the Homestead Property.  This Court authorized the sale.  The proceeds of that sale fully satisfied FSB's Second Loan, which purported to have the Homestead as its primary security.  Moreover, the Homestead sale effectively eliminated three of FSB's security interests (the two on the Homestead and one of the two on the Commercial Property).  This left only FSB's lien on the Commercial Property securing the First Loan.

The current balance on the First Loan is $323,415.13.  The Commercial Property is worth either $350,000 (as scheduled) or $359,000 (tax valuation). This would theoretically leave either $26,584.87 or $35,584.87 in equity after this post-petition sale.

## DISCUSSION

There are two issues in this case.  The first is whether Reinhart's judgment lien can attach to the equity created in the Commercial Property by the post-petition sale of the Homestead—i.e., whether post-petition events can change Reinhart's secured status.  The second issue is whether FSB's mortgage structure

---

[1] The Commercial Property's valuation came from an appraisal that Debtors arranged years ago.  The current valuation of the Commercial Property for property tax purposes is $359,000.

5

(cross-collateralization and duplicate mortgages on each property) should be interpreted as allowing Reinhart to have secured status at the time of filing.

## I. When Secured Status Is Determined

Reinhart first argues that its lien attaches to the equity on the Commercial Property that resulted from the post-petition sale of the Homestead and payment of that debt. Debtor disagrees. Debtor argues that Reinhart's status as secured or unsecured is determined as of the petition date and post-petition events should not be considered.

Chapter 13 of the Bankruptcy Code requires that a debtor's plan either pay a secured creditor the value of its secured claim or allow the creditor to "retain the lien securing such claim." 11 U.S.C. § 1325(a)(5)(b)(i) (2012). If the creditor holding the lien is unsecured, the debtor may strip off the lien and disregard this requirement. Id. § 1322(b)(2); United States v. Ron Pair Enterprs., Inc., 489 U.S. 235, 239 (1989); In re Schmidt, 765 F.3d 877, 879–80 (8th Cir. 2014).

Section 506(a)(1) addresses how the status of a claim is determined:

> An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1). "[A] claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered

6

unsecured." Ron Pair Enterprs., Inc., 489 U.S. at 239. Secured status under § 506 is determined as of the date of filing. N. Am. Banking Co. v. Leonard (In re WEB2B Payment Sols., Inc.), 488 B.R. 387, 390 (B.A.P. 8th Cir. 2013); United States v. Lincoln Sav. Bank (In re Commercial Millwright Serv. Corp.), 245 B.R. 585, 589 (Bankr. N.D. Iowa 1998).

Because secured status is determined on the date of the bankruptcy filing, the Court cannot take post-petition events into account when determining secured status. Thus, the post-petition sale and the equity it created have no effect on whether Reinhart should be treated as a secured creditor under Debtor's Chapter 13 plan. Reinhart's judgment lien simply could not attach to whatever equity became available in the Commercial Property post-petition.

## II.    Calculation of Equity Available at the Time of Filing

Reinhart next argues that even if secured status is determined as of the date of filing, Reinhart should still be considered a secured creditor. Reinhart's argument is based on In re Armbrust Farm, Ltd., which found that a debtor could not use a senior lien that was unlikely to be enforced—and was not treated in a plan of reorganization—to reduce the secured claim of a junior lienholder under § 506. In re Armbrust Farm, Ltd., No. 86-1259-W, 1988 WL 1571427, at *3 (Bankr. S.D. Iowa Mar. 8, 1988) ("Given the debtor's failure to treat the IRS estate tax lien in its plan and the unlikelihood at this point in time that the lien will be

7

enforced, the debtor may not utilize the value of the tax lien to reduce the allowed secured claim of Citizens.").

Reinhart analogizes In re Armbrust to this case. Reinhart argues that Debtors are using a senior lien that was unlikely to be enforced to reduce the collateral available to determine whether Reinhart was secured. According to the Debtors' and FSB's agreement, the Second Loan was supposedly secured primarily by the Homestead and only secondarily by the Commercial property. Thus, the second mortgage on the Commercial Property would only be enforced after exhausting the Homestead Property. Reinhart argues that, because the Homestead Property would fully cover the balance of the Second Loan, the second mortgage on the Commercial Property had no value. The second mortgage on the Commercial Property was unlikely to be enforced. Reinhart concludes that Debtor cannot use this second mortgage to reduce Reinhart's secured claim.

Debtors frame Reinhart's arguments as essentially one for "marshalling." Although Reinhart did reference the doctrine of marshalling at the hearing, Reinhart specifically argued that marshalling did not apply in its post-hearing brief.[2] In fact, Reinhart resists Debtors' characterization of its argument as "in the

---

[2] The Eighth Circuit has summarized the doctrine of marshalling as follows: "If a senior lienor has a lien that extends to and covers two funds or potential funds, and if a junior lienor has recourse to only one of the those funds to satisfy the debt due to him, the senior lienor may be required to exhaust the fund available to him exclusively before proceeding against the fund that is also available to the junior

8

nature of marshalling." Reinhart argues that marshalling does not apply because FSB had two loans, not one, secured by two properties. Whether or not Reinhart's argument is "in the nature of marshalling" is irrelevant. The substance of Reinhart's argument is that the second mortgage on the Commercial Property was ineffective to keep Reinhart's judgment lien from attaching.

Debtors argue that, at the time of the petition, the Commercial Property was actually not encumbered by a primary mortgage and a secondary mortgage, but by two primary mortgages. Debtors point out that Iowa law prohibits the Homestead Property from being treated as the primary collateral securing the Second Loan. Debtors argue that this law supersedes the parties' agreement that the Homestead is the primary collateral for the Second Loan. Debtors argue that the loan arrangement should be construed to bring it into compliance with Iowa law and FSB would have to satisfy both its loans from Commercial Property first. In other words, Debtors argue that the Commercial Property was actually encumbered by two primary mortgages—that the Commercial Property was the primary collateral for both loans. Such a view of the loans would keep Reinhart's judgment lien from attaching to the property.

---

lienor." Berman v. Green (In re Jack Green's Fashions for Men Big & Tall, Inc.), 597 F.2d 130, 132–33 (8th Cir. 1979).

9

The resolution of this issue turns on the interpretation of Iowa homestead law. Iowa Code § 561.16 protects "[t]he homestead of every person . . . from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16 (2015). Protecting the homestead is a public policy of Iowa. Coyle v. Kujaczynski, 759 N.W.2d 637, 638 (Iowa Ct. App. 2008). The Iowa Code, however, provides a relevant exception to this general rule:

> The homestead may be sold to satisfy debts of each of the following classes:
> . . . .
> 2. Those created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, **but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt**.

Iowa Code § 561.21(2) (emphasis added). This provision allows mortgagees to foreclose on homestead property, despite the protection afforded to it, as long as (1) all other collateral pledged in the relevant contract has been sold, and (2) the debt remains unsatisfied. Weir & Russell Lumber Co. v. Kempf, 12 N.W.2d 857, 859 (Iowa 1944).

Courts generally support an individual's right to freely contract with others, but courts do not allow contracts to contravene state law or violate public policy. Staff Mgmt. v. Jimenez, 839 N.W.2d 640, 649 (Iowa 2013). When a contract provision is invalid for this reason, courts may interpret around it and enforce the remaining portions of the agreement if the invalid term is merely incidental to the

10

primary purpose of the contract. <u>Miller v. Marshall Cty.</u>, 641 N.W.2d 742, 752 (Iowa 2002). These rules apply to this case.

Here, Debtor and FSB outlined an intended order of collateral to secure the Second Loan—the Homestead Property was primarily liable and the Commercial Property was secondarily liable. But this intended arrangement would violate Iowa Code § 561.21(2). The Court must determine if the invalid term was merely incidental to the primary purpose of the contract. The Court finds that it was. Thus, properly interpreted under Iowa Code § 561.21(2), the contract requires FSB to proceed against the Commercial Property first. FSB would only be able to resort to a judicial sale of the homestead property if the proceeds of the Commercial Property sale were insufficient to satisfy the Second Loan. <u>See</u> <u>Gaumer v. Hartford-Carlisle Sav. Bank</u>, 451 N.W.2d 497, 501 (Iowa 1990). Thus, like the First Loan, the Second Loan was primarily secured by the Commercial Property and only secondarily (for any deficiency) by the Homestead Property.

Because the Court finds that, under Iowa law, both loans were secured primarily by the Commercial Property, it need not address the arguments about how to properly calculate pre-petition equity in cross-collateralized properties.

### III.  Proper Valuation

Debtor valued the Commercial Property at $350,000 in their filing papers. Reinhart argues that the Commercial Property should be valued at $359,000, the

property's most recent valuation for property tax purposes. Reinhart asserts that the Court should treat that number as its value on the date of filing. Debtor argues that the value of the Commercial Property should be set at $350,000, the amount of Debtor's last formal appraisal.

The first loan balance of $323,415.13 and the second loan balance of $474,230.41 encumbered the Commercial Property for a total encumbrance of $797,645.54. Thus, whether the Commercial Property was worth $350,000 or $359,000, it was fully encumbered on the petition date, leaving no equity to which Reinhart's judgment lien could attach.

## CONCLUSION

The Court finds that the proper time to determine a creditor's secured status is at the time of filing. In addition, the Court finds that the Commercial property was the primary collateral for both loans. Thus, the FSB mortgages fully encumbered the Commercial Property as the primary collateral and Reinhart was unsecured at the time of filing.

**WHEREFORE**, Reinhart's Objection to Debtor's First Modified Plan is **OVERRULED**.

Dated and Entered: March 30, 2016

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE